IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

COLONY INSURANCE COMPANY,

      Plaintiff,

  v.

DOUGLAS FLADSETH; and LAW OFFICES
OF DOUGLAS C. FLADSETH,

      Defendants.

_____/

No. C 12-1157 CW

ORDER GRANTING
PLAINTIFF'S MOTION
FOR SUMMARY
JUDGMENT (Docket
No. 42)

    Plaintiff Colony Insurance Company moves for summary judgment
finding that two state court actions do not fall within the
coverage terms of its policy insuring Defendants Douglas Fladseth
and the Law Offices of Douglas C. Fladseth and that it has no duty
to defend or indemnify Defendants in those actions.  Defendants
oppose Plaintiffs' motion.  Having considered the papers filed by
the parties and their arguments at the hearing on this motion, the
Court GRANTS Plaintiff's motion.

BACKGROUND

I.   The insurance policy

    Plaintiff insured the Law Offices of Douglas C. Fladseth
under Lawyers Professional Liability Policy number EO404193, valid
from August 20, 2010 to August 20, 2011.  Fine Decl. ¶ 5, Ex. A,
7.  The policy provides in relevant part,

    SECTION I - COVERAGES

      1. Insuring Agreement

          a. We will pay, in excess of the Deductible shown
          in the Declarations, those sums any insured becomes
          legally obligated to pay as "damages" because of an
          act, error or omission arising out of your "legal

services" rendered or that should have been
rendered.  We will have the right and duty to
defend any insured against a "claim" seeking those
"damages."  However, we will have no duty to defend
any insured against any "claim" seeking "damages"
for "legal services" to which this insurance does
not apply. . . .

2. Exclusions

This Policy does not apply to any "claim":

. . .

d. Based on or directly or indirectly arising out
of the rights or duties under any agreement
including disputes over fees for services;

. . .

j. Based on or directly or indirectly arising out
of or resulting from:

. . .

(2) The gaining by any insured of any personal
profit, gain or advantage to which an insured
is not legally entitled;

. . .

However, we shall defend such allegations
against any insured if it involves a "claim"
otherwise covered under the Policy until final
adjudication.

. . .

Id. at 9-11.

The policy defines "claim" to mean "a demand for monetary
'damages' arising out of a 'legal service' made against any
insured by service of suit, the institution of arbitration or
administrative proceedings or otherwise, but does not include a
demand for equitable or non-pecuniary relief."  Id. at 17.
"'Damages' means judgments, awards and settlements an insured is
legally obligated to pay as a result of a 'claim' to which this
policy applies."  Id.  "Legal services" means in relevant part the

usual and customary services of a licensed lawyer in good standing acting by or on behalf of the "Named Insured" described in the Declarations of this Policy . . .

Id.  The policy also contains an addendum that provides,

SECTION I--COVERAGES, 2. Exclusions is amended and the following added:

This insurance does not apply to any "claim" for or awards of:

1. Punitive, exemplary or multiple damages; or

2. Equitable or non-pecuniary relief;

including any fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards.

Id. at 21.

II.  The state court actions

The instant case seeks to resolve whether Plaintiff has a duty to defend and indemnify Defendants in two ongoing state court cases, Scholz v. Fladseth, Sonoma County Case No. SCV249442 (the Scholz action), and Christiansen v. Fladseth, Sonoma County Case No. SCV250126 (the Christiansen action).

A. The Scholz action

On April 4, 2011, Mary Scholz, as trustee for the Amanda Greene Trust, filed the Scholz action in state court against Fladseth.  Coelho Decl. ¶ 3, Ex. B.[1]  On April 27, 2011, Scholz filed a first amended complaint (1AC) in the action.  Coelho Decl. ¶ 3, Ex. C (Scholz 1AC).

_____

[1] In their opposition brief, Defendants state that the Scholz action was filed on January 11, 2012.  Opp. at 4.  However, the document that they cite shows a filing date of April 4, 2011. Coelho Decl. ¶ 3, Ex. B.

United States District Court
For the Northern District of California

In the <u>Scholz</u> 1AC, Scholz alleges that Fladseth successfully represented her daughter, Amanda Greene, in arbitration proceedings with Kaiser arising from the failure to diagnose and treat her colon cancer, in which the arbitrator awarded her $475,000.  <u>Id.</u> at ¶¶ 1, 3, 15.  She contends that Fladseth wrongfully represented to Amanda that he was "entitled to a fee based on the <u>total</u> or gross recovery instead of the net sum recovered after deducting costs," as required by California Business and Professions Code section 6146 for attorneys' fees in medical malpractice and health care professional negligence actions.[2]  <u>Id.</u> at ¶¶ 10-11, 16.  She alleges that, when he

_____

[2] This statute provides in relevant part,

(a) An attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence in excess of the following limits:

(1) Forty percent of the first fifty thousand dollars ($50,000) recovered.

(2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered.

(3) Twenty-five percent of the next five hundred thousand dollars ($500,000) recovered.

(4) Fifteen percent of any amount on which the recovery exceeds six hundred thousand dollars ($600,000).

The limitations shall apply regardless of whether the recovery is by settlement, arbitration, or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant, or a person of unsound mind.

. . .

(c) For purposes of this section:

4

disbursed the award to her, Fladseth wrongfully withheld amounts exceeding the statutorily allowable fee.  Id. at ¶¶ 10-11, 16-17, 29-30.  She accuses Defendants of violating their statutory and fiduciary duty to disclose to clients the legal limitations on attorneys' fees in such actions.  Id. at ¶¶ 12, 17.  In her 1AC, Scholz also alleges that Fladseth improperly charged office-overhead expenses as costs in order to subvert the statutory limitations on attorneys' fees, for example, by charging for secretarial and paralegal services under the guise of expert consultant services.  Id. at ¶ 22.  This appears to be the only difference between the Scholz 1AC and the original complaint filed in that action.

Scholz asserts six claims against Fladseth: (1) professional negligence, based on the failure to advise Amanda properly of the maximum attorneys' fees and costs, misrepresenting this to her, taking a greater portion of her recovery than permitted by law, and breaching the ethical duties of good faith and fidelity through these actions, id. at ¶¶ 25-26; (2) money had and received, seeking to void the contingency fee agreement and disgorge the wrongfully taken fees and costs, id. at ¶¶ 29-32; (3) fraud, based on Fladseth's intentional misrepresentation of the amount of attorneys' fees and costs to which he was legally

(1) "Recovered" means the net sum recovered after deducting any disbursements or costs incurred in connection with prosecution or settlement of the claim.  Costs of medical care incurred by the plaintiff and the attorney's office-overhead costs or charges are not deductible disbursements or costs for such purpose.

Cal. Bus. & Prof. Code § 6146.

United States District Court
For the Northern District of California

entitled, id. at ¶¶ 34-37; (4) conversion, for taking the additional amount and refusing to turn it over to Amanda and Scholz, id. at ¶¶ 39-43; (5) accounting of the legal fees and costs, id. at ¶¶ 45-47; and (6) violation of California's Unfair Competition Law (UCL) by the acts alleged in the complaint, including charging fees in excess of those allowed under state law and falsely representing that this was permissible, id. at ¶¶ 49-53. Her prayer for relief includes, among other things, requests for general and special damages, an accounting and a return of the amount that was improperly charged and interest on that amount.

Trial in the Scholz action was set to take place on November 30, 2012. Kingsbury Decl. ¶ 7. Although Defendants have represented that discovery in the Christiansen action is incomplete, see id. ¶ 6, they have made no such claim about discovery in the Scholz action.

In response to Fladseth's motion for summary adjudication in the Scholtz action, Scholz's retained expert, Linda Fermoyle Rice, submitted a declaration dated September 25, 2012. Kingsbury Decl. ¶ 9, Ex. 1 (Rice Decl.). In it, she opined, "Virtually all medical negligence claims involve the use of expert witnesses," to "testify on issues of standard of care, causation and/or damages," which are "legitimate case costs that are routinely billed to the client and deducted from any gross settlement, judgment or arbitration award before attorneys' fees are calculated." Rice Decl. ¶ 9. She also stated that the "hourly fee paid to the expert under those circumstances typically will include that expert's overhead costs, for example typing reports or notes which

may be done by the expert's secretarial staff." Id.  However, she

further stated that it "is not appropriate or within the standard

of care for a medical malpractice lawyer to assign routine

clerical jobs, which can and are done in-house, to a third party,

then bill them to the client as case costs," and that this was

what Defendants had done.  Id. at ¶ 10.  She summarized,

> Mr. Fladseth was using an outside vendor to shift
> overhead costs to his clients, which is not acceptable,
> appropriate, or the standard of care for lawyers
> handling medical malpractice cases.  By doing so, Mr.
> Fladseth deprived his clients of money to which they
> were entitled.  He compounded the injury to his clients
> by calculating his attorneys' fees based on the gross
> recovery obtained for them, in violation of the law.

Id. at ¶ 13.

    B. The Christiansen action

    On August 3, 2011, Tammy Christiansen, Lori Wilson, Ronald

Wanamaker, and Kristina Fontaine filed a putative class action

complaint against Fladseth and another attorney, Richard Sax.

Coelho Decl. ¶ 5, Ex. D.  On September 26, 2012, the state court

granted the plaintiffs' motion to amend their complaint to add two

new claims.  Kingsbury Decl. ¶ 3; see Charlston Reply Decl. ¶ 5,

Ex. A (Christiansen 1AC).[3]

    In the Christiansen 1AC, the plaintiffs' substantive

allegations against Fladseth are nearly identical to those in the

_____

    [3] The Kingsbury declaration represents that the state court
granted the motion on September 26, 2011.  Kingsbury Decl. ¶ 3.
This date appears to be erroneous.  The declaration, which was
dated October 3, 2012, also states that the motion to amend was
filed "recently" and that, as of October 3, 2012, Defendants had
not yet been served with a copy of the order granting the motion
or the 1AC.  Id.  In addition, the copy of the Christiansen 1AC
that Defendants provided to Plaintiff by email on October 4, 2012
is dated July 27, 2012.  Charlston Decl. ¶ 5, Ex. A.

7

*Scholz* action.  The plaintiffs assert the same causes of action for money had and received, fraud, conversion, accounting, and violation of the UCL as those in the *Scholz* action, and two additional claims for breach of fiduciary duty and constructive fraud.  See *Christiansen* 1AC ¶¶ 29-78.  They do not bring a claim for professional negligence as Scholz did.  In their claim for breach of fiduciary duty, the *Christiansen* plaintiffs allege that Fladseth breached his duties towards them and the class by misrepresenting to them the amounts of attorneys' fees and costs that he was allowed to charge.  *Id*. at ¶¶ 58-71.  In the claim for constructive fraud, the plaintiffs allege that each fee agreement "specifically recited that defendant Fladseth was entitled to the attorneys' fees set forth in the contingency fee agreement by virtue of Business and Professions Code § 6146," that Fladseth failed to disclose the fact that the fee agreements in fact violated that section, and that they would not have entered into the fee agreements if they had known such facts.  *Id*. at ¶¶ 73-78. As relief for the claims for breach of fiduciary duty and constructive fraud, the plaintiffs seek awards of general and special damages, exemplary and punitive damages, and disgorgement of fees.  *Id*. at ¶¶ 69-71, 76-78.[4]

The plaintiffs and putative class members in the *Christiansen* action testified in depositions as to their feelings about

---

[4] The parties have represented that, after the instant motion was fully briefed and heard, the trial court granted a motion by the plaintiffs to file a second amended complaint (2AC).  Docket Nos. 56 and 57.  The only apparent difference between the *Christiansen* 1AC and 2AC appears to be the addition of two new plaintiffs.  See Docket No. 56, Ex. A (*Christiansen* 2AC) ¶¶ 5-6.

United States District Court
For the Northern District of California

Fladseth's handling of their cases.  Putative class member Lynn
Darling Wolfe testified that she was "a little disappointed" that
Fladseth "wasn't a little bit more aggressive" and that he seemed
to change his mind about taking her case "midstream" after the
case had progressed too far along for her to be able to find a new
attorney.  Kingsbury Decl. ¶ 10, Ex. 2.  Named plaintiff Tammy
Christiansen also testified that she felt that Fladseth "gave up"
and "lost interest" in her case.  Kingsbury Decl. ¶ 13, Ex. 5.
Putative class member Lila Ann Schoonmaker Bollmann testified that
she was "angry" and "very disappointed" in the representation that
Fladseth had provided her.  Kingsbury Decl. ¶ 11, Ex. 3.[5]  Named
plaintiff Lori Ann Wilson testified that, in the middle of
arbitration with Walgreens, Fladseth said to Sax that he was not
being aggressive enough, "that the arbitration should stop" and
that Sax should "shut up."  Kingsbury Decl. ¶ 12, Ex. 4.  That
"the emotions had gotten so high" at the arbitration made her
"upset."  Id.

III. Tender of defense and history of the instant action

On April 19, 2011, Plaintiff received a claim sent by the
Egloff Insurance Agency on behalf of Defendants for defense and
indemnity regarding the Scholz action.  Fine Decl. ¶ 6, Ex. B.

---

[5] Defendants also assert that Bollman testified that Fladseth
claimed he would be able to reverse a cause of death finding on
her husband's death certificate so that she could recover on his
life insurance policy, but that he was unable to do so.  Opp. at
6.  In the transcript offered into evidence, Bollman in fact
testified that Fladseth said he "felt" that he could get the cause
of death changed, not that he would be certainly be able to do it.
Kingsbury Decl. ¶ 11, Ex. 3, 55:1-4.  The testimony offered into
evidence also does not reveal whether Fladseth was or was not able
to have the cause of death finding reversed.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

On May 10, 2011, Plaintiff sent Defendants a letter, stating that it would defend them in the Scholz action, but that it would do so under a reservation of rights.  Fine Decl. ¶ 7, Ex. C.  In the letter, Plaintiff stated that it reserved the rights "to file a declaratory relief action to determine its rights and duties under the policy" and "to withdraw from the defense and seek recoupment of defense fees and costs if it is determined during the course of the lawsuit that Colony has no coverage."  Id.  It further notified Defendants that "because Colony has reserved rights on this matter you are entitled to associate counsel of your choice with this case."  Id.

On May 31, 2011, the Egloff Insurance Agency forwarded Plaintiff a letter dated May 16, 2011 it received from Defendants. Fine Decl. ¶ 8, Ex. D.  With the letter, Defendants provided a copy of the 1AC in the Scholz action and asserted that the "basis for the claim is for a miscalculation of the esoteric medical malpractice attorney fees which have now been paid in full."  Id. Defendants also state, "In fact, we did not know the medical malpractice fee was to be calculated only after deducting all of our costs," and that "this amounted to about a $20,000 difference in the fee calculation," which they had since paid into Scholz's new attorney's State Bar trust account.  Id.  They further represent that "Colony Insurance offered Cumis Counsel and Mike Watters is so acting."  Id.

On August 8, 2011, Plaintiff received a claim sent by the Egloff Insurance Agency on behalf of Defendants for defense and indemnity regarding the Christiansen action.  Fine Decl. ¶ 9, Ex. E.

n/a

On August 10, 2011, Plaintiff sent Defendants a letter stating that it would defend them in the Christiansen action, but that it would do so under a reservation of rights. Fine Decl. ¶ 10, Ex. F.

Plaintiff initiated this action on March 8, 2012 and filed its 1AC on April 10, 2012. Docket Nos. 1, 9. In the 1AC, Plaintiff seeks a declaration that it does not owe a defense or indemnity to Defendants for the claims asserted in the Scholz and Christiansen actions.

On April 24, 2012, Defendants moved to dismiss or stay these proceedings pending resolution of the Scholz and Christiansen actions. Docket No. 12. Defendants argued that the instant case will be duplicative of the state court actions, because the legal and factual questions here are the same as in those actions.

On June 11, 2012, the Court denied Defendants' motion to dismiss or stay, finding that the coverage question is unrelated to the issues that will be determined in the underlying actions, that this litigation is not duplicative of the state court action, that it was not filed as a means of forum shopping and that it would serve a useful purpose to clarify Plaintiff's legal obligations in the underlying state actions. Docket No. 39.

On June 20, 2012, the Court held a case management conference. Docket No. 41. At that time, the Court set March 7, 2013 as the deadline to hear all case-dispositive motions and set a schedule for the filing of such motions. Id.

On September 12, 2012, Plaintiff filed an early motion for summary judgment on its claims against Defendants and noticed it for hearing on October 25, 2012. Docket No. 42. In its

United States District Court
For the Northern District of California

supporting documents, Plaintiff provided evidence that, as of

September 11, 2012, it had paid $110,518.63 to O'Brien, Watters &

Davis LLP, Defendants' chosen law firm, for the defense of the

Scholz and Christiansen actions.   Fine Decl. ¶ 12, Ex. G.

On September 12, 2012, the Court issued an order, noting that

Plaintiff had filed an early summary judgment motion, and stating,

> The Court prefers to hear all case-dispositive motions
> at one time, absent a good reason to do otherwise.
> Plaintiff's motion may be heard on the date noticed as
> long as Defendants are prepared to oppose it and neither
> party intends to file another case-dispositive motion to
> be heard at a later date.   The parties shall meet and
> confer about the schedule and file an appropriate motion
> under L.R. 7-11 if they are unable to agree.

Docket No. 44.

On September 21, 2012, the parties filed a stipulation to

extend the time for Defendants to respond to the motion for

summary judgment from September 26, 2012 to October 3, 2012,

because Defendants' counsel had to travel in September for work on

other cases.   Docket No. 45.   The Court granted the stipulation on

September 25, 2012.   Docket No. 46.   Defendants did not represent

in the stipulation that they were unprepared to oppose the motion

for summary judgment and did not file an administrative motion

seeking to delay the hearing or briefing on the motion for summary

judgment.

On October 3, 2012, Defendants filed their opposition.

Docket No. 47.   In their opposition, Defendants argued, among

other things, that they have not conducted sufficient discovery in

the underlying actions and this case and thus summary judgment is

premature at this time.   Opp. at 16-17.   They did not file an

affidavit or declaration pursuant to Federal Rule of Procedure

United States District Court
For the Northern District of California

1    56(d).  Defendants also requested permission to renew their motion

2    to stay "in light of the discovery developed in the underlying

3    action[s]."  Id. at 18.

4        In the declaration of Deirdre Taber Kingsbury, which

5    Defendants submitted in support of their opposition, she stated

6    that a motion to amend the complaint in the Christiansen action

7    had recently been granted.  Kingsbury Decl. ¶ 3.  In response,

8    Plaintiff requested a copy of the Christiansen 1AC to review it

9    for coverage, which Defendants then provided.  Charlston Decl.

10   ¶¶ 4-5.  After reviewing the Christiansen 1AC, Plaintiff

11   determined that the amendments still did not create the

12   possibility for coverage.  Id. at ¶ 5.

13       On February 28, 2013 and March 1, 2013, the parties filed

14   case management statements representing that the trial court in

15   the Christiansen action granted a motion to file a 2AC in that

16   action.  Docket Nos. 56 and 57.  Plaintiff stated that the 2AC did

17   not change anything relevant to the present action.  Docket No.

18   56.

19                          LEGAL STANDARD

20       Summary judgment is properly granted when no genuine and

21   disputed issues of material fact remain, and when, viewing the

22   evidence most favorably to the non-moving party, the movant is

23   clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

24   56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

25   Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

26   1987).

27       The moving party bears the burden of showing that there is no

28   material factual dispute.  Therefore, the court must regard as

true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## DISCUSSION

Plaintiff seeks judgment that it is not required either to defend or to indemnify Defendants in the state court actions. Plaintiff argues the state court actions fall outside of, or are excluded from, the coverage provisions of the policy for four reasons: the relief sought in the underlying actions consists of restitution, not damages; the claims asserted are not based on Defendants' provision of "legal services," as defined in the policy; the claims are based on and arise out of a dispute over fees; and the claims are based on and arise out of Defendants gaining a personal profit or advantage to which they were not entitled.

A "liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity."  Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993) (citing Gray v. Zurich Ins. Co., 65 Cal. 2d 263 (1966)).  An "insured is

United States District Court
For the Northern District of California

entitled to a defense if the underlying complaint alleges the insured's liability for damages <u>potentially</u> covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." <u>Montrose Chem. Corp. v. Superior Court</u>, 6 Cal. 4th 287, 299 (1993) (emphasis in original and citation omitted).  That the duty to defend requires only a showing of a potential for liability is "one reason why it is often said that the duty to defend is broader than the duty to indemnify." <u>Id.</u> at 299.

To show that a duty to defend has attached, an insured "must prove the existence of a <u>potential for coverage</u>." <u>Montrose</u>, 6 Cal. 4th at 300 (emphasis in original).  In contrast, to show that no duty exists, "the insurer must establish the absence of any such potential." <u>Id.</u> (emphasis in original).  "In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." <u>Id.</u> (emphasis in original).

A duty to defend may exist "even where coverage is in doubt and ultimately does not develop." <u>Id.</u> at 295 (citation and internal quotation marks omitted).  "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." <u>Scottsdale Ins. Co. v. MV Transp.</u>, 36 Cal. 4th 643, 655 (2005). However, the "duty to defend cannot be adjudged on the basis of hindsight." <u>CNA Casualty of California v. Seaboard Surety Co.</u>, 176 Cal. App. 3d 598, 610 (1986).  Instead, "it must be determined

1  from the facts and inferences known to an insurer from the

2  pleadings, available information and its own investigations at the

3  time of the tender of defense." Id.

4  I.   Coverage provisions

5       "Insurance policies are written in two parts: an insuring

6  agreement which defines the type of risks being covered, and

7  exclusions, which remove coverage for certain risks which are

8  initially within the insuring clause." Rosen v. Nations Title

9  Ins. Co., 56 Cal. App. 4th 1489, 1497 (1997). "Before even

10 considering exclusions, a court must examine the coverage

11 provisions to determine whether a claim falls within [the policy

12 terms]." Atl. Mut. Ins. Co. v. Ruiz, 123 Cal. App. 4th 1197, 1208

13 (2004) (brackets in original; internal quotation marks and

14 citation omitted).  The insured bears the burden of showing that

15 claims fall within the scope of coverage, and the insurer bears

16 the burden of proving that otherwise covered claims fall within an

17 exclusion.  Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 16

18 (1995).  Further, "exclusionary clauses are interpreted narrowly,

19 whereas clauses identifying coverage are interpreted broadly."

20 Garvey v. State Farm Fire & Casualty Co., 48 Cal. 3d 395, 406

21 (1989).

22      Under the policy, to be covered, the state court actions must

23 be "claims" seeking "damages" on "an act, error or omission

24 arising out of [Defendants'] legal services rendered or that

25 should have been rendered."  Fine Decl. ¶ 5, Ex. A, 9.  Plaintiff

26 contends that the state court complaints do not state claims based

27 on providing "legal services" and they seek equitable or non-

28

United States District Court
For the Northern District of California

16

pecuniary relief instead of monetary damages. Defendants dispute both arguments.

A. Providing "legal services"

The parties dispute whether any claims in the state law cases are based on providing legal services. Plaintiff argues that billing and administrative practices do not fall within the meaning of legal services. Defendants contend that they do, and that, even if they do not, claims based on providing legal services have been alleged.

The policy's definition of "legal services" is set forth in relevant part above. In summary, this phrase encompasses the "usual and customary services of a licensed lawyer in good standing." Id. at 17.

Plaintiff contends that this definition limits coverage to claims that arise out of the provision of law-related services, not all acts or omissions that occur in the general running of a business that provides legal services, such as administration or billing. Plaintiff points out that courts interpreting both the phrase "legal services" and the more general phrase "professional services" have recognized a distinction between skills or knowledge specific to the profession, and administrative tasks, such as billing, inherent to all businesses, and have found that the latter is not encompassed with these terms. See Cont'l Cas. Co. v. Donald T. Bertucci, Ltd., 399 Ill. App. 3d 775, 782-788 (2010) (holding the accusation that an attorney withheld more than the permissible amount of fees under Illinois law in a medical malpractice case was not an action arising from an act or omission in the rendering of legal services and thus was not covered by his

17

professional liability insurance coverage); see also Gregg & Valby, LLP v. Great Am. Ins. Co., 316 F. Supp. 2d 505, 513 (S.D. Tex. 2003) (finding that billing and fee-setting are not "professional services" because they do not "require specialized legal skill and knowledge, nor are they acts particular to the legal profession"); Tana v. Professionals Prototype I Ins. Co., 47 Cal. App. 4th 1612, 1619 (1996) (distinguishing between "acts or omissions in the course of representing his clients" and "business practices, such as attorney-client fee arrangements and disputes arising thereunder" in discussing the insured's reasonable expectation of coverage under a lawyers' professional liability policy).

The Ninth Circuit has explained, "A professional obviously performs many tasks that do not constitute professional services," but that, "to be considered a professional service, the conduct must arise out of the insured's performance of his specialized vocation or profession." Bank of California v. Opie, 663 F.2d 977, 981 (9th Cir. 1981); see also Harad v. Aetna Casualty & Surety Co., 839 F.2d 979, 985 (3d Cir. 1988) ("the practice of law . . . has two very different and often overlooked components--the professional and the commercial.  The professional aspect of a law practice obviously involves the rendering of legal advice to and advocacy on behalf of clients for which the attorney is held to a certain minimum professional and ethical standards.  The commercial aspect involves the setting up and running of a business, i.e., securing office space, hiring staff, paying bills and collecting on accounts receivable, etc., in which capacity the attorney acting as businessperson is held to the same reasonable

person standard as any other."). "Thus, even tasks performed by lawyers are not considered 'professional services' if they are ordinary activities that can be completed by those lacking legal knowledge and skill." Gregg & Valby, 316 F. Supp. 2d at 513.

Defendants seek to distinguish the cases offered by Plaintiff because some of them interpret the meaning of "professional services" rather than "legal services." However, other courts have considered the interpretation of professional services to be informative where the definition of legal services, "apart from its focus on a lawyer's activities, is not substantively different from the definitions for 'professional services' set out in the case law." Clermont v. Cont'l Cas. Co., 778 F. Supp. 2d 133, 139 (D. Mass. 2011); see also Cont'l Cas. Co., 399 Ill. App. 3d at 785-87 (interpreting the term "legal services" and discussing cases that applied the term "professional services"). There is no substantive difference between the definition at issue here and the definitions for "professional services" other than the fact the definition here is focused on the services of a lawyer instead of a generic professional.

Defendants argue that the definition here includes the usual and customary services of a lawyer but does not limit those services to only those performed in their capacity as a lawyer. Opp. at 15. They contend that the term should be interpreted to encompass all acts that a lawyer performs in the course of rendering services, including both administrative and professional acts. Opp. at 15-16.

However, the definition at issue here, which encompasses "the services of a licensed lawyer," is not written more broadly than

19

the definitions at issue in the cases discussed above and unambiguously refers to those acts that a lawyer performs that use his or her specialized training and knowledge.  For example, in Tana, the policy defined "professional services" in relevant part as "[t]hose services rendered or that should have been rendered for others as a lawyer."  47 Cal. App. 4th at 1617.  Defendants offer no principled difference between the definition in Tana, which encompasses the services "of a lawyer," and the definition at issue here, which addresses those rendered "as a lawyer." Further, because there is no ambiguity in the term, Defendants' reliance on the principle that ambiguities should be construed in favor of coverage is unavailing.

Defendants also argue that the complaints at issue here do allege "claims for acts, errors or omissions in connection with the legal services rendered by defendants."  Opp. at 16. Defendants apparently refer to the professional negligence claim asserted in the Scholz 1AC, in which the plaintiff asserted that Fladseth committed legal malpractice because he failed to advise Amanda properly of the maximum attorneys' fees and costs allowed under state law.  However, that this was phrased as a professional negligence or malpractice claim does not alter that the billing and fee-setting acts at issue are administrative tasks and not the usual and customary services of a lawyer.

Accordingly, there is no dispute of material fact that the underlying complaints do not create the potential for coverage because they are not based on providing legal services.

United States District Court
For the Northern District of California

B. Damages

Plaintiff also argues that there is no coverage under the policy because the state court actions seek only restitution or disgorgement of funds improperly gained, which cannot constitute covered "damages" under insurance policies in California. See Unified W. Grocers, Inc. v. Twin City Fire Ins. Co., 457 F.3d 1106, 1115 (9th Cir. 2006) ("California case law precludes indemnification and reimbursement of claims that seek the restitution of an ill-gotten gain."); Bank of the West v. Superior Ct., 2 Cal. 4th 1254, 1268 (1992) (holding that public policy requires that "insurable damages do not include costs incurred in disgorging money that has been wrongfully acquired").

Defendants have not disputed this doctrine. Instead, they argue that the plaintiffs in the state court actions have not limited their claims to equitable relief. Defendants point to the fact that the state court plaintiffs have demanded special damages and general damages according to proof to show that they are not just asking for restitution or disgorgement. However, "[t]he label of 'restitution' or 'damages' does not dictate whether a loss is insurable." Unified W. Grocers, 457 F.3d at 1115. Instead, what matters is "whether the claim seeks to recover only the money or property that the insured wrong- fully [sic] acquired." Id.

In the Scholz case, the plaintiff brings a claim for professional negligence, alleging that, by breaching his duty of fidelity, fairness and good faith toward his client, Fladseth committed legal malpractice. Scholz 1AC ¶ 26. The plaintiff seeks an award of "special and general damages in an amount

21

United States District Court
For the Northern District of California

according to proof" for this claim.  Id. at ¶ 27.  In the fraud
claim, the plaintiff also seeks recovery of "general and special
damages in an amount according to proof by reason of said wrongful
taking."  Id. at ¶ 36.  Defendants cite Rice's expert declaration
submitted in the Scholz case to argue that the damages sought go
beyond restitution of the amount based on the miscalculation of
attorneys' fees based on the gross recovery under Cal. Bus. &
Prof. Code § 6146(a) and request compensation because Fladseth
breached the standard of care for lawyers handling medical
malpractice claims.  Opp. at 2.  However, Rice's declaration makes
clear that these claims seek return of the money wrongfully taken
as fees.  Rice opines, "Mr. Fladseth was using an outside vendor
to shift overhead costs to his clients, which is not acceptable,
appropriate, or the standard of care for lawyers handling medical
malpractice cases," and, "By doing so, Mr. Fladseth deprived his
clients of money to which they were entitled."  See also Cal. Bus.
& Prof. Code § 6146(c)(1) ("the attorney's office-overhead costs
or charges are not deductible disbursements or costs" under the
statute).  If attorneys were to label office-overhead expenses as
costs, they would be able to charge customers for these expenses
in addition to the fees charged for their services that are
subject to a statutory cap in section 6146(a).  Defendants point
to nothing in the pleading or the Rice declaration that would
support an award of damages beyond the compensation of the money
that Fladseth is alleged to have acquired wrongfully, apart from
the request for exemplary and punitive damages.  Accordingly, the
Court finds, for this additional reason, that there is no dispute

United States District Court
For the Northern District of California

1  of material fact that the <u>Scholz</u> action did not create a potential
2  for coverage.

3      In the <u>Christiansen</u> action, the plaintiffs allege that
4  Fladseth breached his fiduciary duties towards them by failing to
5  advise them that the fee agreements that he entered into with them
6  violated state law, that they would not have entered into these
7  agreements had he disclosed this fact, and that this breach
8  created a conflict of interest between them and Fladseth that
9  infected their entire relationship.  <u>Christiansen</u> 1AC ¶¶ 63-66,
10 74.  They request disgorgement of some or all of the fees paid to
11 Fladseth on the basis "that he is not entitled to be paid when he
12 has not provided the fidelity that he bargained for and promised"
13 and that he should pay "a penalty" for his breach.  <u>Id.</u> at ¶¶ 71,
14 78.  Thus, their complaint may go beyond seeking recovery of the
15 money that Fladseth wrongfully charged in excess of the statutory
16 limit.  Plaintiff has not met its burden to establish the absence
17 of any potential for coverage on this alternative basis in the
18 <u>Christiansen</u> action.  However, as discussed above, there is no
19 basis for coverage for that case because the claims made were not
20 based on Defendants' providing of legal services.
21 II.  Exclusions from coverage

22     Even if there were coverage for either case, there is no
23 material dispute of fact that the claims in both state court
24 actions fall into two different exclusions contained in the
25 policy, for disputes over fees for services and the gaining of
26 personal profit or advantage to which the insured was not
27 entitled.
28

United States District Court
For the Northern District of California

A. Dispute over fees

Plaintiff contends that the claims asserted in the state court actions are excluded from coverage as "[b]ased on or directly or indirectly arising out of the rights or duties under any agreement including disputes over fees for services."

Defendants respond that the Scholz plaintiff made claims for negligence in providing legal services and that the Christiansen plaintiffs assert that the defendants represented and gave advice concerning the propriety of their fees, which goes beyond allegations simply based on the miscalculation of fees.  Opp. at 9-10.  At the hearing, Defendants further argued that, although the claims in the underlying cases may have been disputes over fees, they were not based on "any agreement."  Defendants also contend that the pleadings in both cases may be amended to add other claims that are not within this exclusion.

Both the Scholz and Christiansen actions "directly or indirectly" arise out of disputes over agreements, including over fees.  All six of the claims made in the Scholz pleadings are based on Fladseth's improper withholding of fees and costs in violation of state law.  Each claim is based on the plaintiff's allegation that Fladseth wrongfully represented to Amanda the amount of fees and costs that he could charge her and that, as a result, she signed a disbursement statement permitting him to withhold the excessive amounts.  Although Defendants point to the negligence claim brought in the Scholz case and argue that it was not subject to this exclusion, even narrowly construed, the allegations made in that claim clearly arise directly or indirectly out of disputes over fees.  In the professional

negligence claim the plaintiff alleges that Defendants "were negligent in the representation of AMANDA, failing to properly advise her regarding the maximum attorney's fees and costs allowed by law and of the appropriate manner of calculating costs and fees, attempting to improperly take a greater portion of AMANDA'S recovery as attorney's fees and costs than is permitted by law, and misrepresenting and fraudulently representing that defendants were entitled to greater attorney's fees and reimbursement of costs than allowed by law." Scholz 1AC ¶ 25.  The claim also alleges that, "by charging excessive and unlawful fees and costs," Defendants committed legal malpractice by breaching the "ethical duties of good faith and fidelity." Id.  Similarly, in the Rice expert declaration, which Defendants also cite in this context, Rice attests that Defendants improperly classified items as deductible costs that should have been included in the attorneys' fees amounts, which are subject to the statutory cap.  These are all indisputably claims regarding disputes over fees.

To the extent that Defendants contend that the exclusion does not apply because the dispute was about fees but not about an agreement, this argument is unavailing.  The exclusion clearly excludes "disputes over fees for services."  In addition, the Scholz complaint alleges that the fee agreement, in the form of the signed disbursement statement, violated state law.  The disputes in the complaint, including the negligence claim, each arose directly or indirectly out of the rights or duties under the fee agreement, namely Fladseth's right to withhold the amount that was excessive under state law.

United States District Court
For the Northern District of California

Similarly, the claims in the Christiansen action arise
directly or indirectly out of the rights or duties under
agreements, including disputes over fees.  Rather than
specifically pointing to allegations or claims included in the
operative complaint in this action that are not subject to this
exclusion, Defendants primarily argue that claims might be added
to the complaint in the future which may not be based on fee
disputes.  Defendants point to the deposition testimony of the
named plaintiffs and the putative class members who stated that
they were unhappy with the legal services provided by Fladseth,
not just the fees and costs charged.  Defendants contend that this
shows that the plaintiffs may later add claims, based on
Fladseth's failure to provide proper legal services, that are
separate and apart from the failure to advise clients properly
about the limits on attorneys' fees and misclassification of
costs.

In support of their argument, Defendants improperly conflate
"two similar, but critically distinct ideas" within California
law.  See Storek v. Fidelity & Guar. Ins. Underwriters, Inc., 504
F. Supp. 2d 803, 810 (N.D. Cal. 2007).  First, "it is beyond cavil
that California law allows, indeed requires, insurers to consider
evidence 'extrinsic' to the allegations set forth on the face of a
third-party complaint."  Id. at 810 (citing, among others, Horace
Mann, 4 Cal. 4th at 1081; Gray, 65 Cal. 2d at 276).  Thus, the
insurance company "cannot construct a formal fortress of the third
party's pleadings and retreat behind its walls" and the third
party is not "the arbiter of the policy's coverage."  Gray, 65
Cal. 2d at 276.  Second, "it is also clear that, under California

law, an insurer's duty to defend extends to all suits that raise the 'possibility' or 'potential' for coverage." Storek, 504 F. Supp. 2d at 810 (citing Gray, 65 Cal. 2d at 275; CNA Casualty, 176 Cal. App. 3d at 606).  Thus, Defendants reason, because there are unplead facts that may give rise to new claims not yet asserted in the lawsuit, Plaintiff is required to provide a defense.

However, under the first principle, "the cases make it clear that extrinsic evidence is sufficient to compel an insurer to defend only when the evidence pertains to claims actually asserted by the third party." Storek, 504 F. Supp. 2d. at 811 (citing, among others, Horace Mann, 4 Cal. 4th at 1081 (extrinsic facts "give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy" (emphasis added in Storek)); El-Com Hardware, Inc. v. Fireman's Fund Ins. Co., 92 Cal. App. 4th 205, 217 (2001) ("extrinsic facts known to the insurer can generate a duty to defend" when "they reveal a possibility the policy may cover the claim").  The extrinsic facts provided here do not reveal that any claim actually asserted in the Christiansen action might fall under the coverage of the policy.

Under the second principle, for a potential amendment "to give rise to a liability that would be covered under the policy," it "must be supported by the facts already pled in the complaint." Upper Deck Co. v. Fed. Ins. Co., 358 F.3d 608, 615 (9th Cir. 2004) (citing Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993) ("Only amendments that would include new causes of action clearly supported by the facts already pled in the complaint may support a finding of potential

United States District Court
For the Northern District of California

liability.") (emphasis in original)); <u>Low v. Golden Eagle Ins.
Co.</u>, 99 Cal. App. 4th 109, 113-14 (2002) (holding that there is no
duty to defend a claim for uncovered economic losses even if it
might later be amended to allege bodily injury); <u>Gunderson v.
Fire Ins. Exch.</u>, 37 Cal. App. 4th 1106, 1114 (1995) ("An insured
may not trigger the duty to defend by speculating about extraneous
'facts' regarding potential liability or ways in which the third
party claimant might amend its complaint at some future date.");
<u>Hurley Constr. Co. v. State Farm Fire & Cas. Co.</u>, 10 Cal. App. 4th
533, 538 (1992) ("The insured may not speculate about unpled third
party claims to manufacture coverage.")); see also <u>Hudson Ins. Co.
v. Colony Ins. Co.</u>, 624 F.3d 1264, 1267-68 (9th Cir. 2010) ("These
cases concluded that there was no potential for coverage, not
because the complaint did not list a particular legal cause of
action, but because the complaint did not allege any facts
supporting a covered cause of action.").  Here, no facts have been
alleged in the complaint that could support an unplead but covered
cause of action.  Instead, the allegations all relate to claims
that arise out of the fee dispute.

Thus, although the Court must consider extrinsic facts that
relate to plead claims, and must consider facts plead that could
support unplead claims, it need not consider unplead facts
supporting only unplead claims.  See <u>Storek</u>, 504 F. Supp. 2d at
812 ("there is no evidence to impose a duty to defend when the
underlying lawsuit sets forth neither the facts nor the legal
claims necessary to bring the lawsuit within the terms of the
policy").  "The duty to defend does not require an insurer to
undertake a defense as to claims that are factually and legally

untethered from the third party's complaint." <u>Burgett, Inc. v.</u>
<u>Am. Zurich Ins. Co.</u>, 830 F. Supp. 2d 953, 961 (E.D. Cal. 2011);
<u>see also</u> <u>Microtec Research, Inc. v. Nationwide Mut. Ins. Co.</u>, 40
F.3d 968, 971 (9th Cir. 1994) (explaining there was no potential
for coverage where the third party knew about facts that could
have given rise to a potentially covered claim but elected to omit
such allegations and claims from the underlying suit).  Because
Defendants are "not entitled to justify an argument for coverage
based on speculation about claims that have not been alleged or
asserted," <u>Golden Eagle Ins. Corp. v. Cen-Fed Ltd.</u>, 148 Cal. App.
4th 976, 988 (2007), their arguments are unavailing.

Further, to the extent that Defendants argue that they may
uncover facts in discovery that may reveal that a claim is
covered, this argument is also not persuasive.  "The determination
of potential coverage is made at the time the lawsuit is tendered
to the insurance company." <u>Upper Deck</u>, 358 F.3d at 612 (citations
omitted).  If new extrinsic evidence were developed that revealed
a potential for coverage, Defendants may submit a new tender of
defense to Plaintiff.  <u>Id.</u> at 613.

If the <u>Christiansen</u> plaintiffs amend their complaint to add
claims not subject to this exclusion, Defendants may re-tender the
actions to Plaintiff for a defense.  However, as currently plead,
taking into account the extrinsic facts offered, there is no
material dispute that the actions fall into this exclusion.

B. Gaining of personal profit or advantage to which insured
was not entitled

In its motion, Plaintiff also seeks a determination that it
has no duty to defend or indemnify Defendants under a provision

that excludes from the policy claims that are "[b]ased on or
directly or indirectly arising out of or resulting from . . .
[t]he gaining by any insured of any personal profit, gain or
advantage to which an insured is not legally entitled."

In their opposition, Defendants correctly point out that this
exclusion further states, "However, we shall defend such
allegations against any insured if it involves a 'claim' otherwise
covered under the Policy until final adjudication."  Thus, this
exclusion cannot be the only basis for disclaiming coverage for
the duty to defend.  Because the claims are not otherwise covered,
this exclusion may serve an additional basis to deny coverage as
to both the duty to defend and the duty to indemnify.

The allegations in the underlying complaint arise out of
Defendants' unlawful gaining of a profit or advantage to which
they were not entitled, by categorizing overhead expenses as
costs, by charging clients rates higher than the statutory limit
and by telling their clients that this was proper.  Thus, the
underlying actions also fall into this exclusion.

III. Defendants' request to renew motion to stay and to delay
     adjudication of the instant motion for summary judgment

Defendants request that they be allowed to renew their motion
for a stay and that this motion be denied as premature until they
have had an opportunity to conduct discovery in this case and
further discovery in the underlying cases.

Plaintiff's motion for summary judgment was filed prior to
the deadline previously set by the Court for dispositive motions.
Shortly after the motion was filed, the Court issued an order
stating that the motion could be heard as noticed "as long as

United States District Court
For the Northern District of California

30

United States District Court
For the Northern District of California

Defendants are prepared to oppose it and neither party intends to file another case-dispositive motion to be heard at a later date." Docket No. 44.  The Court directed the parties to meet and confer about the schedule and file an administrative motion if they were unable to agree.  Id.  The parties subsequently filed a stipulation to change the briefing dates based on Defendants' counsel's travel schedule.  Docket No. 45.  Defendants, however, did not represent that they were not prepared to oppose the motion.

In addition, Defendants have not submitted a declaration as required under Federal Rule of Civil Procedure 56(d) to show that they cannot present facts essential to justify their opposition or that facts they would seek in discovery would entitle them to relief.  They have also not made any showing that they were diligent in seeking discovery; although Defendants state that they have "not had the opportunity to conduct discovery" in this case, their opposition was filed more than three months after the initial case management conference was held.  Further, as previously noted, if the complaints in the state court actions are amended, they may re-tender the defense to Plaintiff.

CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment (Docket No. 42).

The Clerk shall enter judgment and close the file.  Plaintiff shall recover its costs from Defendants.

IT IS SO ORDERED.


Dated: 4/3/2013

CLAUDIA WILKEN
United States District Judge